No. 21947.

RAYMOND CRUZ BACA *v.* THE PEOPLE OF THE STATE OF COLORADO.

(418 P.2d 182)

Decided September 19, 1966.

John R. Naylor, for plaintiff in error.

Duke W. Dunbar, Attorney General, Frank E. Hickey, Deputy, Robert C. Miller, Assistant, for defendant in error.

*En Banc.*

Mr. Chief Justice Sutton delivered the opinion of the court.

On December 30, 1964, Raymond Cruz Baca was tried and convicted of possessing narcotic drugs, namely, cannabis and cannabis sativa L, more commonly known as marijuana, in violation of C.R.S. '53, 48-6-2 and C.R.S. '53, 48-6-20, as amended. He was sentenced to the Colorado State Penitentiary for a period of not less than three years nor more than eight years.

During the trial, counsel for the defendant moved to suppress certain evidence which consisted of a Salem

cigarette package and four hand-rolled, brown cigarettes identified as containing marijuana. The motion was denied, and the matter was again raised in Baca's motion for a new trial. This motion was also denied. The sole question presented on this writ of error is whether the four marijuana cigarettes were the product of an unreasonable search and seizure thereby violating Baca's constitutional rights under the Fourth Amendment to the United States Constitution and under Article II, Section 7 of the Colorado constitution?

The defendant was arrested on a public street in Pueblo, Colorado, at approximately 1:00 A.M. on August 2, 1964, for being drunk in a public place and for indecent exposure, both of which offenses violated the Municipal Ordinances. He was searched briefly at that time by Police Officer D. A. Davenport, placed in the police car, and taken to the city police station. On arrival at the station Baca and the police officers proceeded to the jailer's office where the defendant's picture was taken and a more thorough search of his person was conducted by the jailer, Officer Jack E. Wiley. It was at this time that the cigarette package containing four marijuana cigarettes was found in a pocket of Baca's clothing. It is this second search, conducted by the jailer, to which the defendant objects as being unreasonable. He contends that it was exploratory and general in nature and too far removed in time and place to be an incident of his initial arrest. With this contention we do not agree.

In Colorado, it has been held that an officer conducting a reasonable search, either under a valid search warrant or incident to a valid arrest, who uncovers contraband or articles the possession of which is a crime, may seize these articles even though they may not relate to the crime for which the arrest was made. An officer is not required to close his eyes or ignore the existence of such articles under the penalty that if he does seize them, they may not be admitted

in evidence. See *Casias v. People,* 160 Colo. 152, 415 P.2d 344 (1966); *Hernandez v. People,* 153 Colo. 316, 385 P.2d 996 (1963). The fact that the articles discovered do not relate to the crime for which Baca was initially arrested does not render the search exploratory and general. See *Harris v. United States,* 331 U.S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399 (1947).

Baca does not contend that the arrest in question was invalid; but rather, as previously stated, he does urge that the second search of his person at the jail was not incident to the arrest and therefore was unreasonable. In support of this contention he has cited several cases in which searches and seizures have been found unreasonable. In particular he relies on *Preston v. United States,* 376 U.S. 364, 84 S. Ct. 881, 11 L. Ed.2d 777 (1964). That case, however, involved a search, not of defendant's person, but of his car after he had been taken to the police station and the car had been taken to a garage. The court, in holding the search there to be unreasonable, said at page 368: "At this point (after taking the defendant to the station) there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime * * *." (Part in parenthesis added.) The situation in *Preston* is entirely different from one that involves the search of an arrested person. In the latter case the United States Supreme Court commented on the right of the police to engage in such conduct; it pointed out, however, that "An arrest may not be used as a pretext to search for evidence." See *United States v. Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. Ed. 653 (1950); compare *United States v. Lefkowitz,* 285 U.S. 452, 52 S. Ct. 420, 76 L. Ed. 877 (1932). Even in *Preston* the court commented on the various types of contemporaneous searches and pointed out that to be objectionable they had to be remote in time *and place.* The latter, of course, refers to a physical location and not to the individual in lawful custody.

In the instant case we view it as a *reductio ad absurdum* to urge that a prisoner cannot be searched, who may either be armed and so could kill or wound his jailers and escape, or, who might have on his person other evidence of the crime for which he was arrested. In *Charles v. United States,* 278 F.2d 386, 388 (9th Cir. 1960), where marijuana cigarettes were found on a defendant's person during a second search, the court of appeals aptly remarked as follows:

"* * * Assuredly, a second search of appellant's person for concealed weapons, improving upon the earlier desultory 'frisking' would not abrogate constitutional strictures."

 Again, in *Charles,* the court noted, and we agree, that:

"Modern police practice calls for a thorough search at the station-house of any person who is taken into custody as well as the 'frisking' which takes place at the moment of arrest. * * * Such searches are not unreasonable; they are an integral part of efficient police procedure."

Nor is it a valid contention that the search was unreasonable because it was remote in time and place from the arrest. *Baskerville v. United States,* 227 F.2d 454, 456 (10th Cir. 1955), is a case that is in point here. In *Baskerville* the defendant was arrested, pursuant to a warrant, placed in a car and taken to the county jail where he was searched by the jailer and articles taken from him were placed in an envelope and stored with a jail custodian. They were later examined by a Secret Service agent who received permission to do so from the warden. In overruling the claim that such was an unreasonable search and seizure the court said:

"* * * The search was incident to a lawful arrest. The fact that the search was not made until Baskerville was taken to the County Jail from the point of his arrest in Denver, which was only a comparatively short

482

time, did not, in our opinion, prevent the search from being an incident to a lawful arrest."

We hold, therefore, that a police station, immediately following an arrest, cannot be held to be too remote from the place of arrest in a search and seizure case.

We perceive no error in the record.

The judgment is affirmed.

MR. JUSTICE FRANTZ not participating.