444 P.2d 517

STATE of Utah, Plaintiff and Respondent,

v.

Danny Brent CRISCOLA, Defendant
and Appellant.

No. 11092.

Supreme Court of Utah.

Aug. 29, 1968.

**273**

Ronald N. Boyce, Salt Lake City, for defendant and appellant.

Phil L. Hansen, Atty. Gen., Gerald G. Gundry, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

CROCKETT, Chief Justice:

Danny Brent Criscola was convicted by a jury of burglary in the second degree and grand larceny in connection with breaking into the Highland Petroleum Company at Zenith Avenue and Highland Drive in Salt Lake County on the night of January 11–12, 1967. He appeals, charging error in the admission of evidence and in instructing the jury.

The defendant complains of the admission of two different sets of evidence taken at separate times from his car (the car he was driving) when he was arrested in connection with a traffic law violation. The first consisted of six cans of Pennzoil, and an oil filter, which were of the same quantity and make as articles stolen from Highland Petroleum Company. It was obtained from the automobile driven by the defendant by Officer Thomas W. Brown after he had stopped the defendant and placed him under arrest, for driving without a valid driver's license, on the next day after the crime, that is, on January 13, 1967. The other consisted of some tools, a crowbar, and a sledge hammer which were on a later occasion, February 24, 1967, obtained from an automobile defendant was driving on that occasion after the defend-

ant was again arrested and taken into custody in connection with traffic law violation.

Defendant's position is that the taking from his car of evidence not connected with the cause of his arrest, without obtaining a search warrant, constituted an unreasonable search,[1] and that the use of such unlawfully obtained evidence against him should void his convictions.

■■ There are some fundamental precepts which bear on the problem thus presented. As with any law, a proper application of the provisions of the Constitution is aided by reflection upon the circumstances out of which it arose and the purpose it was intended to serve. It will be remembered that the provision of concern here: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated * * *" had its origin as a safeguard against highhanded and ruthless intrusions against persons, homes and property which had been perpetrated by officials of an oppressive government. No right-thinking person would desire to minimize or disparage the protections thus assured. But it is equally important that

such protections be applied in circumstances they were intended to cover and that they do not become so extended beyond their reasons for being that even where there is no danger or likelihood of any such abuse, they provide a cloak of protection by which those engaged in criminal activities may escape detection and punishment. The essential thing is to keep within the reasonable middle ground, between the protecting of the law-abiding citizenry from highhanded or officious intrusions into their private affairs; and the imposing of undue restrictions upon conscientious officers doing their duty in the investigation of crime. It was undoubtedly in an awareness of the desirability of avoiding the difficulty just mentioned that the language of the Fourth Amendment does not denounce all searches, but only those which are "unreasonable."[2]

■ The question to be answered is whether under the circumstances the search or seizure is one which fairminded persons, knowing the facts, and giving due consideration to the rights and interests of the public, as well as to those of the suspect, would judge to be an unreasonable or oppressive intrusion

1. Fourth Amendment, U. S. Constitution; Sec. 14, Art. I, Constitution of Utah.
2. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777; Cooper v. State of Calif., 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, and Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879.

against the latter's rights.[3] Due to the responsibility of the trial court in controlling the admissibility of evidence, and his advantaged position to pass on such matters, it is his prerogative to make this determination. For those reasons his ruling should be indulged with a presumption of correctness,[4] and should not be disturbed unless it clearly appears that he was in error.[5]

In order to distinguish this case from cases relied upon by defendant, we acknowledge our agreement generally with the proposition that a peace officer may not, without justifiable cause, stop a citizen and conduct a "fishing expedition" search of the automobile for the evidence of crime. However, the facts of this case present no such situation.

In both instances with which we are concerned, the defendant was driving an automobile which did not belong to him, and without a valid driver's license. Inasmuch as he could not lawfully drive the automobile and was placed under arrest, it was necessary that the car be taken into possession and impounded. When the officers thus became responsible for the car and its contents, it was in conformity with ordinary prudence and customary practice, for the protection of the car owner as well as the police, for the officers to take an inventory of its contents. This of course necessarily involves discovery of what the contents were. To suggest that under those circumstances where the police had thus come into the possession of personal property which they had reason to believe was connected with a felony, they would have to go and obtain a warrant to conduct a "search" and "find" that which they already had lawful possession of, seems completely discordant with reason.[6] Accordingly, there is no reason apparent to us why the trial court should have rejected the evidence in question as having been obtained by an "unreasonable" search. It is our opinion that the officers were not only acting within their

3. Cf. Cooper v. State of Calif. footnote 2 above; and see United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 434, 94 L.Ed. 653; People v. Airheart, Cal.App., 68 Cal.Rptr. 857.

4. See Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Miller v. United States, 354 F.2d 801.

5. See statement in State v. Seymour, 18 Utah 2d 153, 417 P.2d 655.

6. See Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 wherein evidence of other crimes discovered by the police as the result of caretaking operations pursuant to impounding a vehicle driven by the defendant was held to be admissible; Draper v. State of Maryland (Md.Dist.), 265 F.Supp. 718; United States v. Fuller (D.C.Cir.), 277 F.Supp. 97; People v. Carter, 38 Ill.2d 496, 232 N.E.2d 692; People v. Norris, Cal.App., 68 Cal.Rptr. 582. For a good discussion of this subject by Justice Lillie and citation of authorities bearing thereon see People v. Roth, Cal.App., 68 Cal. Rptr. 49.

rights, but would have been remiss in their duty if they had not done what they did in taking the evidence and making use of it together with other evidence in building the case against the defendant.

[6] The foregoing determination as to the propriety of receiving the questioned evidence renders it unnecessary to go into other issues raised: (a) whether upon the basis of the knowledge the police had of the defendant, his activities, and information concerning an automobile of the same description seen near the time and place of the burglary, there may be another and separate justification for the actions of the arresting officers in taking the personal property,[7] and (b) whether the defendant's failure to object to the introduction of the evidence waived the right to do so.

We have examined and find without merit the contention of error with respect to the instructions. If they are looked at all together as they should be, the issues to be determined were stated to the jury in a clear and understandable manner. The trial judge adequately explained to them the elements of both burglary and grand larceny as defined in our penal code,[8] and that they must find each and all of them beyond a reasonable doubt before they could render the verdict of guilty.

Affirmed. No costs awarded.

CALLISTER, TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

7. That search of automobile without warrant requires reasonable or probable cause to believe it contains evidence relating to crime see Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L. Ed. 543; Bailey v. United States, 386 F.2d 1 (5th Cir. 1967).

8. Second Degree Burglary, Sec. 76-9-3, and Grand Larceny, Sec. 76-38-4, U.C.A.1953.