**STATE of Utah, Plaintiff and Appellee,**

v.

**Edwin Leslie DAVIS, Defendant and Appellant.**

No. 910166–CA.

Court of Appeals of Utah.

Nov. 5, 1991.

adequate findings. Her remaining claims are          best left for another day.

J. MacArthur Wright, St. George, for defendant and appellant.

Eric A. Ludlow and Wade A. Farraway, St. George, for plaintiff and appellee.

Before BENCH, GREENWOOD and ORME, JJ.

BENCH, Presiding Judge:

Edwin Leslie Davis was charged with driving under the influence; interference with a peace officer; refusal to provide information; and, driving with a revoked license. Following the denial of a suppression motion by the trial court, Davis entered a conditional guilty plea and this appeal followed. We affirm.

## I. FACTS

On December 16, 1990, at 4:45 a.m., an officer of the Hurricane City Police Department was parked in a police vehicle, with its headlights off, to the north of a curve on a state road in Washington County. In the rear view mirror, he saw a slow moving car with its headlights on high beam. Before the car reached the officer, it turned down a side road leading to some nearby corrals, a small subdivision, and the private residence of the developer of the subdivision. The car traveled about 100 feet on the side road when its lights suddenly extinguished.

The officer was concerned about the possibility of car problems and went to assist. As the officer pulled in behind the stopped car, he noticed a can of beer sitting on the trunk. The officer also noticed an opened passenger door, and a man standing near the trunk, urinating. The officer suspected an alcohol-related violation and activated the overhead lights on his vehicle.

The officer then approached the car and found Davis seated behind the steering wheel. Although the keys were still in the ignition, the engine was off. The officer asked Davis where he had been and requested Davis to produce a driver's license or some other form of identification. Davis said he was returning from closing "the Eagles" in Hurricane, but refused to produce any identification. During this verbal exchange, the officer smelled a strong odor of alcohol on Davis's breath.

The man who had been urinating returned to the car and handed the officer the vehicle registration through the driver's open door. The officer repeated his request for Davis's license. This time, however, Davis cursed the officer, slammed the car door, and drove off without producing any identification. The officer pursued Davis to a motor home near the developer's residence. Davis was subsequently arrested for driving under the influence, interference with an arresting officer, refusal to provide information, and driving with a revoked license.

At the suppression hearing, Davis denied that he had driven on the state road, but claimed that he had driven along a parallel road, and stopped the car to move a rock. Since the place of the initial encounter was private, Davis argued that any police investigation was precluded.[1] Davis

---

1. On appeal, Davis challenges the finding of the trial court that the road was open to the public.

Although Davis lists the issue as one presented for review, Davis never briefed the issue. Ac-

also argued that the arrest was invalid because it was not based on probable cause.

The trial court held that the officer had a sufficiently articulable suspicion of wrongdoing, on the basis of the facts as the officer perceived them, to permit investigation. The court analyzed the encounter by noting that the officer was first alerted to a possible problem by seeing a vehicle turn off the State road and suddenly stop. The court then pointed out that, as the officer arrived at the scene, he saw a can of beer and a man urinating in close proximity to the car he had seen on the road only moments before. The trial court found that these facts, "by reason of simple biology," gave the officer an articulable suspicion that an alcohol-related offense had been committed and, on that basis, that an investigation was proper.

Following the denial of the suppression motion, Davis entered a conditional guilty plea and this appeal followed. *See generally State v. Sery*, 758 P.2d 935, 939 (Utah App.1988) (regarding the use of conditional guilty pleas).

## II. STANDARD OF REVIEW

■ Search and seizure challenges are fact sensitive. *State v. Smith*, 781 P.2d 879, 880 (Utah 1989). The factual findings of a trial court that underlie its decision to grant or deny a motion to suppress will not be disturbed on appeal unless clearly erroneous. *Smith*, 781 P.2d at 881. Factual findings are clearly erroneous if they are "against the clear weight of evidence, or the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." *State v. Walker*, 743 P.2d 191, 193 (Utah 1987).

## III. ANALYSIS

Davis argues that the police encounter was illegal because the officer did not have probable cause to detain, question, and arrest for "driving under the influence and the other offenses that arose out of the detention and arrest."

cordingly, we do not consider it for failure to comply with our briefing requirements under Rule 24(a) of the Rules of Appellate Procedure.

■ At the outset, we reiterate the well-settled law since *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that the Fourth Amendment protection against unreasonable searches and seizures applies to all detentions, including brief investigatory stops by police that fall short of formal arrest. *Terry*, 392 U.S. at 19, 88 S.Ct. at 1879. *See also State v. Sierra*, 754 P.2d 972, 975 (Utah App.1988); *State v. Trujillo*, 739 P.2d 85, 87 (Utah App.1987). Not every encounter between the police and the citizenry, however, implicates a Fourth Amendment violation; if nothing during an encounter approximates a detention, there is no Fourth Amendment seizure. *United States v. Mendenhall*, 446 U.S. 544, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980).

■ In *Trujillo*, 739 P.2d at 87–88, this court held that a person is not seized when a police officer merely approaches the person on the street and asks questions, if the person stopped is willing to listen. The person approached is not required to listen to or answer an officer's questions, and refusal to talk to an officer, without more, "does not furnish reasonable grounds for further detention." *Id.* at 88. *See also Florida v. Royer*, 460 U.S. 491, 498, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983).

■ However, a person is "seized" within the meaning of the Fourth Amendment, when an officer deprives a person of his liberty by means of physical force or show of authority. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1879 n. 16; *Trujillo*, 739 P.2d at 87. Since the Fourth Amendment protects against *unreasonable* searches and seizures, there must be a reasonable basis for even a brief investigatory detention and officers must have a "reasonable suspicion, based on objective facts, that the individual is involved in criminal activity." *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979). Whether the objective facts known to the officer support a reasonable suspicion of wrongdoing is to be determined by the totality of the circumstances and in light of the officer's experience and training. *State v. Dorsey*, 731

*See Christensen v. Munns*, 812 P.2d 69, 72 (Utah App.1991); *Koulis v. Standard Oil Co. of Cal.*, 746 P.2d 1182, 1184–85 (Utah App.1987).

P.2d 1085, 1088 (Utah 1986); *State v. Menke*, 787 P.2d 537, 541 (Utah App.1990); *State v. Holmes*, 774 P.2d 506, 508–09 (Utah App.1989).

Moreover, an investigatory detention must be "temporary and last no longer than is necessary to effect the purpose of the stop." *State v. Deitman*, 739 P.2d 616, 617 (Utah 1987) (citing *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984), *cert. denied*, 476 U.S. 1142, 106 S.Ct. 2250, 90 L.Ed.2d 696 (1986)).

In this case, there was no detention subject to Fourth Amendment protection when the police officer initially pulled in behind the stopped car. Nothing in the record suggests that the officer caused Davis to stop the car or that formal investigation into possible criminal wrongdoing had begun when the officer first arrived. The car in which Davis was seated had stopped before the officer arrived, independent of any action taken by the officer, express or implied, under show of authority or physical force.[2] Davis had not been detained by the officer, even momentarily, and could have reasonably believed that he was free to drive away as the officer pulled up in his vehicle. *Mendenhall*, 446 U.S. at 554, 100 S.Ct. at 1877.

However, the moment the officer saw a can of beer on the trunk of the car, an open passenger door, and a man urinating, the officer had a reasonable suspicion, based upon objective facts, that a crime had been committed. The officer then detained Davis by a display of authority when he activated the overhead lights on his vehicle. Although there may be a host of other innocent explanations to account for the presence of the persons and the things in and around the car, the officer had a reasonable basis to believe that the man urinating had been a passenger in the car, and that he had been drinking during the time he had been a passenger.

The officer had a reasonable suspicion, based on objective facts, of a violation of the open container law, since it is illegal for a passenger to drink any alcoholic beverage in a motor vehicle, whether or not the vehicle is moving, stopped or parked on a highway. *See* Utah Code Ann. § 41-6-44.20 (1990). In addition, the officer had a reasonable basis to suspect the driver of a related violation since it is illegal to allow another to keep, carry, possess or transport an open container of alcohol in the passenger compartment of a motor vehicle when the vehicle is on the highway. *Id.*

A peace officer has statutory authority to "stop any person in a public place when [the officer] has reasonable suspicion to believe [the person] has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions." Utah Code Ann. § 77-7-15 (1990). Therefore, the officer could properly approach Davis, and ask for proof of identification as part of his investigation.

Based on objective facts learned in the course of his investigation, the officer had reasonable grounds to suspect Davis of drunk driving. The officer observed a can of beer on the car, smelled a strong odor of alcohol on Davis's breath, and found him to be uncooperative and argumentative. Davis's refusal to produce a driver's license also provided grounds to suspect Davis of a license-related violation.

The factual findings of the trial court that the officer had probable cause were, therefore, not clearly erroneous. They were not against the clear weight of evidence, and we are not convinced that a mistake was made.

The judgment of the trial court is therefore affirmed.

GREENWOOD and ORME, JJ., concur.

---

2. Davis cites several cases for the proposition that a police officer must have reasonable suspicion to detain for a traffic violation. *See State v. Schlosser*, 774 P.2d 1132 (Utah 1989); *State v. Mendoza*, 748 P.2d 181 (Utah 1987); *State v.* *Carpena*, 714 P.2d 674 (Utah 1986). Since the police encounter in this case was not initiated by a traffic stop for a moving violation, Davis's reliance on these cases is misplaced.