STATE of Utah, Plaintiff and Appellee,

v.

Wendy L. MUNSEN, Defendant
and Appellant.

No. 910031–CA.

Court of Appeals of Utah.

Nov. 7, 1991.

**14**

Joan C. Watt, Salt Lake City, for defendant and appellant.

R. Paul Van Dam and Marian Decker, Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and RUSSON, JJ.

GARFF, Judge:

Wendy L. Munsen, appeals the trial court's order denying her motion to suppress, which resulted in her conviction for possession of a controlled substance. We reverse and remand.

Because the court's findings are not at issue, we rely on the court's findings of facts. On November 26, 1989, at about 3:30 a.m., Officer Jeff Jensen of the Midvale City Police was patrolling the parking lot of Smith's Food King in Midvale, Utah. This store is open twenty-four hours a day. Officer Jensen observed a pickup truck parked "by itself" in the lot. On closer observation, he noticed a man lying on the seat of the truck, apparently working with the car stereo.

Officer Jensen questioned the man, who identified himself as Alan Hunter. The vehicle registration, which Hunter produced at the officer's request, indicated that someone other than Hunter owned the vehicle. Hunter stated he had purchased the truck at a pawnshop. Officer Jensen noticed a driver's license on the seat of the truck. The license listed a woman's name and bore the photograph of a woman. Hunter also stated that he did not know where the license came from. He offered that it might belong to his girlfriend, who he said, was in the store.

During this questioning, Officer Jensen noticed appellant Wendy L. Munsen exit the supermarket and walk in the direction of the truck. There were no other vehicles or people near Officer Jensen and Hunter. Officer Jensen intercepted Munsen to see whether she could confirm Hunter's explanation about who he was and what he was doing, and to see whether she had a role in any possible criminal activity.

Officer Jensen asked Munsen if she knew Hunter. She replied that she had known him for one year, and that his name was "Hunt" or "Hunter." Officer Jensen then had Munsen wait in the patrol car while he obtained field card information and ran a warrants check on her. Because the check on Munsen turned up several outstanding warrants, Officer Jensen arrested her. During a search of Munsen's person, incident to her arrest, Officer Jensen discovered the controlled substance, methamphetamine. Munsen was later charged with possession of a controlled substance, a third degree felony.

On January 3, 1990, Munsen moved to suppress all evidence seized from her on the ground that the detention and search of her person violated her Fourth and Fourteenth Amendment rights. The trial court denied the motion, concluding that Officer Jensen's actions "were reasonable and proper under the circumstances" because of the "inconsistent, vague and suspicious answers received from the defendant and Mr. Hunter." On February 2, 1990, Munsen entered a conditional plea of guilty to the charge of possession of a controlled substance, preserving her right to appeal the trial court's denial of her motion to suppress.

■ Munsen does not challenge the court's findings. Rather she challenges the court's application of the law to those findings. We "review the ultimate conclusions drawn from those findings as a matter of law, under a correction of error standard, affording no deference to the

trial court." *State v. Taylor*, 818 P.2d 561, 565 (Utah App.1991). *See State v. Mendoza*, 748 P.2d 181, 183 (Utah 1987); *State v. Carter*, 812 P.2d 460, 466 n. 6 (Utah App. 1991). *See also United States v. Hernandez–Alvarado*, 891 F.2d 1414, 1416 (9th Cir.1989) (setting forth the generally held view that whether reasonable suspicion exists is a mixed question of fact and law, and the trial court's ultimate conclusion regarding reasonable suspicion is a legal conclusion which is reviewed de novo).

## INITIAL DETENTION

■■ Munsen asserts that her initial detention, while Officer Jensen ran a warrants check on her, violated her Fourth Amendment right to be free from unreasonable searches and seizures. Both parties agree that this detention was a seizure within the meaning of the Fourth Amendment. Therefore, the issue is whether Officer Jensen had any reasonable suspicion justifying the detention.[1]

The United States Supreme Court first articulated the requirement that an officer must have a reasonable suspicion to stop a person in *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). This concept was later codified in Utah Code Ann. § 77–7–15 (1990):

> A peace officer may stop any person in a public place when he has a reasonable suspicion to believe he has committed or is in the act of committing or is attempting to commit a public offense and may demand his name, address and an explanation of his actions.

■■ We also consider the totality of the circumstances to determine whether the officer had "specific and articulable facts which, taken together with rational inferences from those facts," warrant a deten-

tion. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880; *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). The articulable facts, along with the rational inferences, "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Cortez*, 449 U.S. at 418, 101 S.Ct. at 695. Thus, we review the basis for the intrusion to determine whether the officer "observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot...." *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884.

■■ Our analysis must focus on Officer Jensen's reasonable suspicions as to Munsen and not Hunter. The officer "must have a particularized and objective basis for suspecting the *particular person* stopped of criminal activity." *Cortez*, 449 U.S. at 417–18, 101 S.Ct. at 695 (emphasis added). *See Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238 (1979). The mere fact that Munsen was with Hunter does not necessarily conjoin her actions with his. A "person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Ybarra*, 444 U.S. at 91, 100 S.Ct. at 342. *See Brown v. Texas*, 443 U.S. 47, 51–52, 99 S.Ct. 2637, 2641, 61 L.Ed.2d 357 (1979) (mere presence in a neighborhood frequented by drug users does not give rise to reasonable suspicion); *United States v. Di Re*, 332 U.S. 581, 593, 68 S.Ct. 222, 228, 92 L.Ed. 210 (1948) ("Presumptions of guilt are not lightly to be indulged from mere meetings."); *State v. Ramirez*, 817 P.2d 774, 786 (Utah 1991) (no reasonable suspicion where man walking near defendant had run away).

---

1. We recognize three levels of police-citizen encounters, each of which requires a different degree of justification to be constitutionally permissible under the Fourth Amendment.

   (1) [A]n officer may approach a citizen at anytime [sic] and pose questions so long as the citizen is not detained against his will; (2) an officer may seize a person if the officer has an "articulable suspicion" that the person has committed or is about to commit a crime; however, the "detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop;" (3) an officer may arrest a suspect if the officer has probable cause to believe an offense has been committed or is being committed.

   *State v. Deitman*, 739 P.2d 616, 617–18 (Utah 1987) (per curiam) (quoting *United States v. Merritt*, 736 F.2d 223, 230 (5th Cir.1984)).

In the present case, the court found that Munsen was first seen emerging from a twenty-four hour grocery store at 3:30 a.m., walking toward Hunter's truck, which was parked by itself, with no other vehicles or people in the area. The court made no findings as to the lighting, the remoteness, or the accessibility of the area.

■ The lateness of the hour, as it relates to the twenty-four hour grocery store, has no particular significance when evaluating reasonable suspicion. *State v. Mendoza,* 748 P.2d 181, 183–84 (Utah 1987) provides an apt analogy. The court in *Mendoza* held that the fact that a car was stopped at 4:50 a.m. on an interstate highway was of "little relevance" because "travelers use the interstate highway at all times of the day and night...." *Id. See also State v. Carpena,* 714 P.2d 674, 675 (Utah 1986) (per curiam) (no reasonable suspicion to stop vehicle with out-of-state plates moving slowly through frequently burglarized neighborhood at 3:00 a.m.); 3 W. LaFave, *Search and Seizure* § 9.3(c) at 456 (lateness of hour should be considered in relation to other factors including "the location—its remoteness, available lighting, the presence of others nearby and its accessibility.").

The court made a conclusory finding that her answers were "inconsistent, vague and suspicious." Although the court labels this a "finding," it is more accurately characterized as a conclusion. *See State v. Vigil,* 815 P.2d 1296, 1297–99 (Utah App.1991) (distinction between findings of facts and conclusions of law based on substantive analysis notwithstanding label applied by trial court). This "finding" actually appears to summarize the previous, more specific findings relating Munsen's answers to Officer Jensen's questions.

■ Therefore, in determining whether the findings adequately support a conclusion of reasonable suspicion, we view the conclusory finding in light of the specific findings as to her answers. To wit: Munsen was asked if she knew Hunter and she answered affirmatively. She was asked who owned the driver's license, and she responded that she did not know who owned it nor how it got in the truck. She was asked how long she knew him and she said she had known him about a year. So far, her answers were consistent, direct, and appropriate. Finally, she was asked the name of her companion, and she answered that it was Hunt or Hunter. This is the only answer that could even possibly be considered equivocal. However, this answer is not inconsistent, vague and suspicious.[2] More to the point, her answer, considered in light of the totality of the circumstances, did not reasonably create a particularized and objective basis to suspect Munsen of any criminal activity.

■ We therefore conclude that the trial court erred in ruling that Officer Jensen had a reasonable suspicion to justify the level two seizure of Munsen. Thus, the evidence obtained as a result of the illegal detention should be suppressed. "If a seizure occurs and the police are unable to point to the specific and articulable facts that justified that seizure, the seizure violates the fourth amendment of the United States Constitution, and evidence obtained as a result of the illegal seizure must be excluded." *Ramirez,* 817 P.2d at 786 (citing *Terry,* 392 U.S. at 15, 88 S.Ct. at 1876).

Accordingly, we reverse the order denying Munsen's motion to suppress, and thus the resulting conviction. We remand for further proceedings consistent with this opinion.

RUSSON, J., concurs.

JACKSON, Judge (concurring in result only):

I would reach the same result with different analysis. Although the officer had

---

**2.** In evaluating evasive and suspicious responses we have held that a defendant's nervous conduct when questioned by an officer "is consistent with innocent as well as with criminal behavior." *State v. Trujillo,* 739 P.2d 85, 89 (Utah App.1987). On the other hand, "[l]aw enforcement officers may rely on the 'characteristics of the area,' and the behavior of a suspect who appears to be evading police contact." *United States v. Mendenhall,* 446 U.S. 544, 564, 100 S.Ct. 1870, 1882, 64 L.Ed.2d 497 (1980) (quoting *United States v. Brignoni–Ponce,* 422 U.S. 873, 884–85, 95 S.Ct. 2574, 2581–82, 45 L.Ed.2d 607 (1975)).

reasonable suspicion to justify Munsen's detention, I think the length and scope of the detention was not justified by the circumstances. The warrants check was excessive without further inquiry. *State v. Johnson,* 805 P.2d 761, 763–764 (Utah 1991). *Cf. State v. Holmes,* 774 P.2d 506 (Utah App.1989).